UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KATELYN HICKEY, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Docket No. 06-156-P-S |
| ) | |
| SCOTT R. SLAWSON, et al., ) | |
| ) | |
| Defendants ) | |

### RECOMMENDED DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The defendants, Scott Slawson, Douglas Bracy, Charles Szeniawski and the Town of York, move for summary judgment on all claims asserted against them by the plaintiff, Katelyn Hickey. The plaintiff moves for summary judgment as to the liability of Slawson. I recommend that the court grant the defendants' motion and deny that of the plaintiff.

### I. Summary Judgment Standards

#### A. Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving

1

party.'"  *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor.  *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue."  *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e).  "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party."  *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

"This framework is not altered by the presence of cross-motions for summary judgment." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 6 (1st Cir. 2003).  "[T]he court must mull each motion separately, drawing inferences against each movant in turn."  *Id*. (citation omitted); *see also, e.g., Wightman v. Springfield Terminal Ry. Co*., 100 F.3d 228, 230 (1st Cir. 1996) ("Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se*.  Cross motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed.  As always, we resolve all factual disputes and any competing, rational inferences in the light most favorable to the [nonmovant].") (citations omitted).

## B.  Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District.  *See* Loc. R. 56.  The moving party must first file a statement of material facts that it claims are not in dispute.  *See* Loc. R. 56(b).  Each fact must be set forth in a numbered paragraph and supported by a specific record citation.  *See id*.  The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]"  Loc. R. 56(c).  The nonmovant likewise must support each denial or qualification with an appropriate record citation.  *See id*.  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation.  *See id*.  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id*.

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(e).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id*.; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at

their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.") (citations and internal punctuation omitted).

## II. Factual Background

The following undisputed material facts are appropriately supported in the parties' respective statements of material facts.[1]

At all relevant times, Slawson, Szeniawski and Bracy were employed, respectively, as a patrol officer, a lieutenant and chief of the York Police Department. Defendants' Statement of Material Facts ("Defendants' SMF") (Docket No. 11) ¶¶ 1, 3-4; Plaintiff's Answer to Defendant's [sic] Statement of Material Facts ("Plaintiff's Responsive SMF") (Docket No. 14) ¶¶ 1, 3-4. As a lieutenant, Szeniawski is responsible for overseeing the operations of the patrol division, whose officers enforce Maine's motor vehicle laws. *Id*. ¶ 6. Slawson began employment with the York Police Department in October 2004. *Id*. ¶ 10.

Prior to February 5, 2006 Bracy had not received any complaints about Slawson unlawfully exercising his powers to arrest a person for violation of state motor vehicle laws or his ability to correctly run license status checks through the Maine Department of Motor Vehicles. *Id*. ¶ 24. There also was no evidence of any widespread problem involving other officers of the York Police Department in these areas. *Id*. ¶ 25.

In July 2005 the State of Maine began using the new American Association of Motor Vehicle Administrators' ("AAMVA") national standards in response to license status checks from law enforcement officers in the field. *Id*. ¶ 28. These national standards were designed to cause all states'

---

[1] The plaintiff has moved to amend paragraphs 1-3 and 20 of her statement of material facts. Plaintiff's Response to Request to Strike, etc. (Docket No. 22) at 1-3. Because I do not rely on any of those paragraphs in this recommended decision, I do not address this motion.

4

motor vehicle responses to appear the same. *Id.* ¶ 29. The Maine Department of Public Safety issued written definitions of license status codes that police officers could see in response to a query concerning a particular operator's license status, and these definitions were distributed to all York police officers. *Id.* ¶ 30. York police cruisers are equipped with mobile data terminals so that a driver's license query can be made by a police officer directly from his or her cruiser. *Id.* ¶ 31.

On February 5, 2006 at approximately 11:15 p.m. Slawson was on patrol and fueling his cruiser at the Irving gas station on Route 1 in York when he observed a Ford Mustang pull into the parking lot. *Id.* ¶ 33. He observed the driver of the vehicle, later identified as the plaintiff, enter the station's convenience store and exit with a six-pack of beer. *Id.* ¶ 34. The plaintiff appeared to be very young and Slawson suspected that she was not of legal age to purchase alcohol. *Id.* ¶ 35. At this time, the plaintiff was 22 years old and had a difficult time convincing people that she was over 21. *Id.* ¶ 36. It was not unusual for the plaintiff to be carded when purchasing alcohol in February 2006. *Id.* ¶ 37.

Slawson checked the vehicle's license plate number through the mobile data terminal in his cruiser and it came back registered to the plaintiff, whose age was listed as 22. *Id.* ¶¶ 38-39. The Maine Department of Motor Vehicles records also listed the plaintiff's driver's license status as "eligible" rather than "licensed." *Id.* ¶ 39. A holder of a valid Maine license would be reported on a license check as a "licensed" driver. *Id.* ¶ 40. According to the State of Maine's driver's license status codes in use at the time, the status of "eligible" meant "the individual does not have a current valid license and has nothing on record which would prevent issuance." *Id.* ¶ 41. The report Slawson received on the screen of his data terminal read:

> Status: Eligible voluntarily surrendered the Maine license was returned by New York on 2001-08-06.
> Issued: 2005-11-17 Class: C (non-CDL) Expires: 2007-04-21.

5

Plaintiff's Additional Statement of Material Facts ("Plaintiff's SMF") (Docket No. 15) ¶ 8; Defendants' Response to Plaintiff's Additional Statement of Material Facts ("Defendants' Responsive SMF") (Docket No. 18) ¶ 8.

Slawson spoke to the plaintiff, who identified herself to him. Defendants' SMF ¶ 43; Plaintiff's Responsive SMF ¶ 43. Slawson asked his dispatch center to run its own records check, and the dispatcher advised him that the plaintiff was "eligible" to obtain a Maine license according to Department of Motor Vehicle records. *Id*. ¶ 44. Slawson asked the plaintiff if she knew why her license status was shown only as "eligible," rather than "licensed," and she replied that she did not know. *Id*. ¶ 46. If the plaintiff had no valid driver's license, Slawson could not let her drive from the scene; he took her into custody to transport her to the York police station. *Id*. ¶ 53.[2] When Slawson advised the plaintiff that he was arresting her, she became very upset. *Id*. ¶ 56. The plaintiff was not physically injured during handcuffing or when she was placed in the back seat of the cruiser. *Id*. ¶ 58.

Slawson summoned a bail commissioner to the police station. *Id*. ¶ 61. The plaintiff's mother also appeared, having been alerted to the arrest by a friend of the plaintiff. *Id*. After the bail commissioner arrived, set bail, and began to fill out his paperwork so that the plaintiff could be released, Slawson check the plaintiff's purse prior to returning it to her. *Id*. ¶ 63. In the purse Slawson found a Maine temporary and/or restricted operator's license with an issue date of November 17, 2005 and an expiration date of February 17, 2006. *Id*. ¶ 64. In addition Slawson found a New York driver's license for the plaintiff with one corner clipped off which is the procedure used by the Maine Department of Motor Vehicles when a license from another state is surrendered to the State of Maine. *Id*. ¶ 65. The plaintiff confirmed that she had taken her New York license to the Maine

---

[2] The plaintiff asserts that this paragraph of the defendants' statement of fact "[s]hould be stricken as conclusory." Plaintiff's Responsive SMF ¶ 53. As I have phrased it, the paragraph is a factual statement. The plaintiff apparently takes the position that there is a relevant distinction between a belief on Slawson's part that the plaintiff's license was suspended and a belief that she did not have a (*continued on next page*)

Department of Motor Vehicles and that it had been clipped there. *Id*. ¶ 66. She stated that the Maine Department of Motor Vehicles had advised her that she could only use the New York license for identification purposes from that point forward and could not use it as a license to operate a motor vehicle. *Id*. ¶ 67.

The plaintiff does not remember whether Slawson himself found the Class C license which she claims she had with her that day or she gave it to him. *Id*. ¶ 73. She does not remember any conversation with Slawson at the police station about her license. *Id*. ¶ 75. She was arrested at around 11:30 p.m., transported to the police station, bailed and released just after 1:00 a.m., a total period of custody of no more than an hour and a half. *Id*. ¶ 76. Slawson was subsequently informed by the York County District Attorney's Office that it was dismissing the charge against the plaintiff because she had demonstrated that she was in fact licensed to operate a motor vehicle on the date of her arrest. *Id*. ¶ 77.

The temporary license was not produced by the plaintiff but was found by Slawson during a search of her purse after the bail commissioner had set bail for her release. *Id*. ¶ 79.

York police officers are trained to use Department of Motor Vehicles records as the official source of information concerning license status. *Id*. ¶ 83. While an operator may display a license that appears valid on its face, the mere possession of that license does not necessarily indicate that the operator can lawfully drive in the State of Maine. *Id*. ¶ 84.

The plaintiff was charged $100.00 for the towing and holding of her vehicle for less than 24 hours and incurred an unknown amount of legal fees in one meeting with her attorney to discuss the charge pending against her. *Id*. ¶¶ 90-92.

---

valid driver's license. *Id*. I see no relevance to such a distinction.

The Maine Bureau of Motor Vehicles[3] had, in fact, issued the plaintiff a Class C license on November 17, 2005 which was set to expire on April 21, 2007. Plaintiff's SMF ¶ 12; Defendants' Responsive SMF ¶ 12.

### III. Discussion

#### A. Claims Against Slawson

Both Slawson and the plaintiff have moved for summary judgment on the claims against Slawson, which are set forth in the first count of the complaint. The claims include deprivation of liberty and property without due process of law and wrongful arrest. Amended Complaint (Docket No. 5) ¶ 18.

The defendants first contend that all of the claims against Slawson should be governed by the Fourth Amendment's right to be free from unreasonable seizures rather than the Fourteenth Amendment's guarantee of due process. Defendants Slawson, Bracy, Szeniawski, and Town of York's Motion for Summary Judgment, etc. ("Defendants' Motion") (Docket No. 10) at 7-8. The plaintiff agrees.[4] Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, etc. ("Opposition") (Docket No. 13) at 5. *See Crooker v. Varriale*, 69 F.3d 531 (Table), 1995 WL 660955 (1st Cir. Nov. 8, 1995) at *5 (Fourth Amendment protects possessory interest in property). I will accordingly apply the test adopted by the First Circuit for analysis of Fourth Amendment claims:[5]

> Under the Fourth Amendment, the right to be free from unreasonable seizures of the person gives rise to a requirement that arrests be supported by

---

[3] The plaintiff refers to the issuing agency as a "bureau." The defendants refer to it as a "department." "Bureau of Motor Vehicles" appears to be the correct title. 29-A M.R.S.A. § 101(10).

[4] To the extent that the amended complaint might nonetheless be construed to allege a claim under the Fourteenth Amendment for deprivation of property without due process of law ("procedural" due process), the plaintiff has failed to allege that no post-deprivation state remedy exists, *see generally* Amended Complaint, a necessary element of such a claim, *Ricci v. Paolino*, 959 F.2d 230 (Table), 1992 WL 63521 (1st Cir. Apr. 1, 1992) at *2, and any such claim accordingly fails.

[5] The plaintiff jumps immediately to the legal test for application of the doctrine of qualified immunity, Opposition at 6, but if no constitutional violation is shown on the summary judgment record, the defendants' invocation of qualified immunity is not even reached, *Moody v. City of Lewiston*, 213 F.Supp.2d 1, 3-4 (D. Me. 2002).

8

> probable cause. As the Court explained in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963):
>
>> It is basic that an arrest with or without a warrant must stand upon firmer ground than mere suspicion . . . , though the arresting officer need not have in hand evidence which would suffice to convict. The quantum of information which constitutes probable cause — evidence which would "warrant a man of reasonable caution in the belief" that a felony has been committed . . . — must be measured by the facts of the particular case.
>
> The probable cause test is an objective one, for, as the Supreme Court noted in *Beck* [*v. Ohio*, 379 U.S. 89 (1964)], "[i]f subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers and effects,' only in the discretion of the police. Therefore, we have stated that probable cause exists when the facts and circumstances within the police officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense. Finally, in reviewing any determination regarding the sufficiency of cause to effect an arrest we must consider the totality of circumstances to evaluate the government's demonstration of sufficient probability of criminal activity."

*Rivera v. Murphy*, 979 F.2d 259, 263 (1st Cir. 1992) (some citations, footnote and internal punctuation omitted).

Slawson contends that he committed no constitutional violation when he arrested the plaintiff because he justifiably and reasonably relied on the official state record which listed the plaintiff's motor vehicle license status as "eligible," giving him probable cause to arrest the plaintiff. Defendants' Motion at 11. The plaintiff responds that the First Circuit has "condemned the disregard of 'facially valid documentary evidence' which would have established that the police did not have cause to arrest," citing *Peña-Borrero v. Estremeda*, 365 F.3d 7 (1st Cir. 2004). Opposition at 7. In this regard, she relies on the second line of the screen on the terminal in Slawson's cruiser, which indicated that a Class C license had been issued to the plaintiff in November 2005 and was due to expire in April 2007. *Id*. She also relies on a memorandum sent to Slawson and issued by the Maine

9

Department of Public Safety which warned that there might be "issues" with the new license code system. *Id*. She contends that she is "entitled to the fair inference that she produced" this license "at the commencement of the traffic stop," although she does not recall when she gave it to Slawson, if at all. *Id*. at 8.

The rules of summary judgment do not stretch quite so far. Any such inference could only be drawn in connection with the plaintiff's opposition to the Slawson's motion, of course, and not in support of her own motion. *Santoni*, 369 F.3d at 598 (nonmoving party is entitled to benefit of all reasonable inferences in its favor). Even for that limited purpose, the inference the plaintiff wishes the court to draw in this case is neither fair nor reasonable. The factual conclusion that the plaintiff presented a Class C license to Slawson when he first asked to see her license, given the undisputed facts in this case, could only be the result of speculation. Further, even if the plaintiff could be given the benefit of this inference, it would make no difference. The plaintiff does not dispute that York police officers are trained to use the state Bureau of Motor Vehicles records as the official source of information concerning license status, Defendants' SMF ¶ 83; Plaintiff's Responsive SMF ¶ 83; and that the mere possession of a driver's license that appears valid on its face does not necessarily indicate that the person to whom that license is issued can lawfully drive in the state of Maine, *id*. ¶ 84. Thus, Slawson would have consulted the Bureau records whether or not the plaintiff presented him with a Maine Class C license at the outset.

The memorandum on which the plaintiff also relies is simply too general to be construed to impose on Slawson a duty to disregard the Bureau's report that the plaintiff's driver's license status was "eligible" rather than "licensed." The fact that "issues" may arise during the initial phase of the use of a new recording and reporting system does not prevent the users of that system from relying on it for any particular purpose. To hold otherwise would be to render the entire system a nullity.

10

*Peña-Borrero* does not require a different result. In that case, the plaintiff was arrested twice on the same warrant. 365 F.3d at 9. The officers effecting the second arrest ignored "facially authentic documentary evidence that the warrant was no longer effective" and "failed to follow precautionary procedures to assure its vitality." *Id*. ¶ 13. Here, the plaintiff argues that her Class C license was "facially authentic," but that is simply not enough. If it were, anyone carrying a facially valid driver's license could drive indefinitely without actually being licensed to do so. Further, in this case Slawson did follow a precautionary procedure, and would have been required to do so if the plaintiff did produce a facially valid Class C license, and that procedure yielded the official information that the plaintiff's license status was "eligible" rather than "licensed." *Peña-Borrero* does not help the plaintiff.

Remaining for consideration is the information that appeared on Slawson's data terminal screen following the identification of the plaintiff's license status as "eligible." That information is ambiguous but not necessarily contradictory to the stated status. It is certainly possible that a license issued to the plaintiff on November 17, 2005 had been surrendered or otherwise voided by February 5, 2006, so that the plaintiff's license status at that time was actually "eligible," even though the license itself bore an expiration date of April 21, 2007. In addition, Slawson had nowhere to turn at midnight to resolve any ambiguity in the information; the plaintiff does not suggest that there was any source of such clarifying information available to Slawson at that time. Contrary to the plaintiff's contention, Opposition at 8, her physical possession of "[a] facially valid" Class C license at the time of the arrest did not and could not "conclusively establish[] that the 'Eligible' status [reported to Slawson] was erroneous." The plaintiff's argument depends on the assumption that the "eligible" classification meant that no Maine license had ever been issued to her, *id*. at 8, and there is no evidence to support this necessary element of her argument in the summary judgment record.

"It is sufficient that a reasonable officer in possession of this information might . . . find it likely that . . . the [plaintiff] had committed a crime." *Acosta v. Ames Dep't Stores, Inc.*, 386 F.3d 5, 9 (1st Cir. 2004). "Probable cause for an arrest exists when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been . . . committed and that the putative arrestee likely is one of the perpetrators." *Id*. The officer's conclusion need only be reasonable, not highly probable. *Id*. at 11. This is the case here.

It is not necessary to consider the qualified immunity defense asserted by Slawson. He is entitled to summary judgment on the sole count of the complaint asserted against him because the summary judgment record demonstrates that he had probable cause to arrest the plaintiff.

### B. Claims Against Bracy, Szeniawski and Town of York

The second count in the complaint alleges that Bracy and Szeniawski failed to train Slawson "in the proper interpretation of communications issued by the . . . Bureau of Motor Vehicles concerning the license status of drivers" and "in the appropriate criteria by which to decide when and under what circumstances he should exercise the power to arrest[.]" Amended Complaint ¶ 25. It makes no specific allegations against the defendant town. *Id*. ¶¶ 21-27. The plaintiff asserts that the specific failure she alleges is that "no training was offered to line police officers regarding interpretation of the Department[ of Public Safety]'s new communications nor was there any proficiency testing." Opposition at 13. In the unlikely event that this claim survives at all in the absence of a showing of any constitutional violation in Slawson's actions, then it requires, at the least, evidence of "deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The fact that "a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city." *Id*. at 390. Yet, here the plaintiff offers no evidence that the alleged lack of training caused any problems other than the single

incident in which she and Slawson were involved. Neither Bracy nor Szeniawski is alleged to have participated in the events giving rise to this action. There is no evidence that these defendants (or the town) were put on notice in any way other than through the incident involving the plaintiff and Slawson that York police officers were wrongly arresting holders of valid Maine's driver's licenses based on incorrect information routinely being supplied by the Department of Public Safety's new communications program, *see Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581-82 (1st Cir. 1994), or, alternatively, that the need to train was obvious enough to trigger municipal liability without further evidence.[6] Indeed, the plaintiff admits that there was no evidence of any widespread problem involving York police officers in the areas of violation of state motor vehicle laws or running license checks through the new state system. Defendants' SMF ¶ 25; Plaintiff's Responsive SMF ¶ 25.

Under these circumstances, a reasonable factfinder could not possibly conclude that either Bracy or Szeniawski showed deliberate indifference to the rights of drivers in the plaintiff's position. In addition, the plaintiff has made no attempt to show that the conduct of these supervisors was affirmatively connected to the allegedly violative conduct of Slawson. *Maldonado-Denis* at 582. Such a connection could be found, for example, if the plaintiff provided evidence that either Bracy or Szeniawski, or both, knew of, approved of, or purposely disregarded Slawson's culpable conduct. No such evidence has been provided. Bracy and Szeniawski are entitled to summary judgment on the second and final count in the complaint.

With respect to the town, a similar analysis applies. While a town may still be liable for the actions of its police officers where the officers themselves are immune from liability by statute or as a result of application of the doctrine of qualified immunity, *see Napier v. Town of Windham*, 187 F.3d

---

[6] "To demonstrate deliberate indifference a plaintiff must show (1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk[.]" *Camilo-Robles v. Hoyos*, 151 F.3d 1, 7 (1st Cir. 1998).

177, 191 (1st Cir. 1999), in this case Slawson's immunity is not in issue. I have concluded that Slawson had probable cause to arrest the plaintiff and accordingly that no constitutional violation occurred. Thus, the plaintiff cannot demonstrate that a violation of her constitutional rights was a "highly predictable consequence" of the town's alleged failure to train Slawson. *Porto v. Town of Tewksbury*, 488 F.3d 67, 73 (1st Cir. 2007), and cases cited therein. The town is entitled to summary judgment on the only count asserted against it.

### IV.  Conclusion

For the foregoing reasons, I recommend that the defendants' motion for summary judgment be **GRANTED** and that the plaintiff's motion for partial summary judgment be **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of July, 2007.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge